UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.         Case No. 1:14-CR-133

JOHN RICHARD BALYO,         HON. ROBERT HOLMES BELL
      United States District Judge

      Defendant.

_____/

## GOVERNMENT'S SENTENCING AND RESTITUTION MEMORANDUM

The government submits this sentencing memorandum in support of the Presentence Report (PSR) in this case. (ECF #19, Page ID #109-151). The enhancements are properly applied and are not disputed. Neither party objects to the facts in the PSR.

### SENTENCING DISCUSSION

Balyo, 34, hosted a morning talk show on a Christian radio station in Grand Rapids. (ECF #19, Page ID #110; ¶¶ 189, 202.) His voice filled the cars of families commuting to work and school with their children. He was a recently married family man (*id.*, ¶ 189), a wedding photographer, a volunteer with the Kent County Sheriff's Department (*id.*, ¶ 199), a former camp counselor, and an overseas mission volunteer with children. No one ever reported any misgivings or indiscretions about Balyo.

But he was a wolf in sheep's clothing.

Balyo had a storage unit where he kept a collection of children's obituaries and articles on the infamous BTK (Bind, Torture, Kill) serial killer. (*Id.*, ¶ 66.) In the storage unit, he also had news clippings relating to the kidnapping, death, and sexual abuse of children. He had notebook paper with numerous boys' names on it and phrases like "swimming," "photo shoot," "sleeping/napping," "strapped down," "boy/cub scout," "headlock," "abuse," and "swim lessons." He kept photographs of nude children in the storage unit as well, including images from a known child pornography series. (*Id.*) He stored DVDs, a camera, a camcorder, and a thumb drive that included encrypted files titled "hostage1" and "hostage2." (*Id.*, ¶¶ 64-65.)

And he had a bondage kit that held rolls of duct tape, 4 pairs of handcuffs, parachute cord, nylon rope, 107 zip ties, a set of rubber gloves, two lengths of 18-inch chain, and a padlock. (*Id.*, ¶ 64.) This was the bondage kit he brought with him to the Kalamazoo and Battle Creek hotels to sexually assault and pornographically photograph the 12-year-old Victim 1:



**Figure 1 – Bondage kit (outside)**



**Figure 2 – Bondage kit (contents)**

2

Balyo's pedophilic interests featured bondage and violence against prepubescent boys. He possessed an anatomically-correct male child-sized mannequin, which he kept tied up inside a dog crate that had been modified with eye bolts to fasten rope. He kept a blond wig on the mannequin. Homeland Security Investigations agents discovered a series of photographs of Balyo in a basement pointing a handgun at the mannequin, which was tied up to a post. Balyo approached the mannequin from different angles and used the mannequin's feet to masturbate himself. The series of photographs ended with Balyo wrapping the mannequin in a carpet or a tarpaulin, as if to bury it.

Balyo met Ronald Moser online on November 20, 2013, after Moser posted child pornography to a website and the message, "Looking for people in or around michigan that r in to kids" (sic). (*Id.*, ¶¶ 21, 24, 129.) Balyo sent Moser a message over Yahoo stating, "Yeah! Saw your album and request for anyone from Michigan into kids :) I am that person! Lol." (*Id.*, ¶ 129.) He told Moser he was into "boys, 6-13ish. I like them wearing very little, but especially barefoot. Also into some bondage." (*Id.*) Moser replied that he was into boys ages 4-12, and especially their "butts." (*Id.*) Balyo told Moser, "I'd like to get to know you a bit more, then I'm more open to sharing. I've got LOTS we could trade / chat about. Now that we know what each other likes." (*Id.*) Balyo added, "I snapped this in an airport bathroom" and sent Moser a file. (*Id.*)

Balyo arranged to meet Moser in person, and Moser brought Victim 1. The first meeting was at a hotel in Kalamazoo on April 19, 2014. (*Id.*, ¶ 76.) The second meeting was at the same hotel in Kalamazoo on May 9, 2014. (*Id.*, ¶ 77.) The third time was at a hotel in Battle Creek on May 17, 2014. (*Id.*, ¶ 47.) All three times, Balyo paid for the room, took pornographic photos of Victim 1, engaged in sexual acts with Victim 1, watched Moser engage in sexual acts with the

3

victim, and paid Victim 1 after each meeting.  (*Id.*, ¶¶ 57, 58, 63, 115-120.)  The pictures speak for themselves and will be available for the Court at sentencing.

When Moser was arrested on June 5, 2014, Balyo took several days off work.  He brought his Apple computer and a number of memory cards and thumb drives to a friend's house, and Balyo's iPhone was never found.  After Moser's arrest, investigators discovered Balyo's involvement and worked to identify him.  When Balyo was arrested on June 20, 2014, he made a phone call to his boss and asked someone to go over and retrieve a piece of paper from his car with the name "Don" and a phone number.  (*Id.*, ¶ 68.)  Balyo told his boss to break the car window if needed, and to call Don and tell him to "make alternate arrangements for his heart medication."  (*Id.*)  "Don" was the friend with whom Balyo left his computer after Moser's arrest, and the friend reported it and turned the computer over to law enforcement when he learned of Balyo's arrest.  (*Id.*, ¶ 68-70.)  The computer had child pornographic images on it that Balyo produced, including those of Victim 1 from the hotels.  (*Id.*, ¶¶ 72-73.)

On one of the memory cards seized from Balyo's residence, investigators found a number of digital photographs depicting a teenage male in bondage, but not nude.  On November 17, 2014, HSI spoke with the person depicted in those images.  He stated that he met Balyo on a website in October 2008 when he was a 16-year-old high school student.  Balyo would have been 29 years old.  They shared an interest in bondage and met once at a hotel.  Balyo used rope, handcuffs, a blind fold, and a ball gag to tie him up in different positions inside the hotel and took pictures of him.  The teen denied touching Balyo sexually, and when HSI asked if Balyo touched him sexually, he replied that he could not remember.

Balyo's recommended guideline range is life imprisonment, but the maximum term of imprisonment is capped by the combined statutory maximum of both counts.  (*Id.*, Page ID

#151.)  The PSR recommends the maximum sentence, which is 30 years' imprisonment on Count One and 20 years' imprisonment on Count Two, to be served consecutively for a total of 50 years' imprisonment.  (*Id*.)  The PSR also recommends the maximum term of supervised release, which is life.  (*Id.*)  The government concurs with this recommended sentence, as it reflects the need for just punishment, specific deterrence, general deterrence, and protection of the public.  *See* 18 U.S.C. § 3553(a).

Balyo operated under the radar, living a double life.  On the outside, he was a law abiding, charitable, upstanding citizen.  He was able to gain people's trust, leading no one to suspect anything was amiss.  But underneath the surface, he was feeding a morbid and sadistic fascination with children, creating and accumulating pedophilic materials, rehearsing a sexual kidnapping fantasy with a gun and a child-size mannequin, and meeting clandestinely in hotel rooms with young boys in bondage.  Balyo's three meetings with Victim 1 resulted in sexual exploitation and degradation of a child in the most depraved ways.

## RESTITUTION DISCUSSION

Victim 1's mother has requested $8,500 in restitution, which should be awarded in this case.  (*Id.*, ¶ 133.)  She and her family submitted victim impact statements discussing the lifelong harm that Balyo's and Moser's exploitation caused.  Those statements are included as sealed attachments to this memorandum.

Under 18 U.S.C. § 2259, restitution is mandatory when a defendant is convicted of offenses involving child pornography under Chapter 110, as in this case.  A court "may not decline to issue an order under this section because of (i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source."  18. U.S.C. § 2259(b)(4)(B).

Section 2259 directs the court to order restitution for "the full amount of the victim's losses . . . ." 18 U.S.C. § 2259(b)(1). A "victim" includes both the child and his or her parents or legal guardian. 18 U.S.C. § 2259(c). The term "full amount of the victim's losses" includes any cost incurred by the victim for the following:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

*Id.*

A victim's losses are recoverable if they are both "directly attributable" to the defendant's offense and "reasonably foreseeable." *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012). This translates into a requirement that the defendant's conduct is both (i) a "cause-in-fact" and (ii) a "proximate cause" of the victim's losses. *United States v. Gamble*, 709 F.3d 541, 547 (6th Cir. 2013). (Note that the recent decision in *United States v. Paroline*, 134 S.Ct. 1710 (2014) is not at issue here, as that case pertained to restitution in the case of wide-scale internet distribution and redistribution of child pornography, not to losses caused by the original abuser of the child and the person who produced the child pornography.)

Balyo's sexual exploitation of Victim 1, and the resulting economic harm to Victim 1 and his family, is subject to mandatory restitution under 18 U.S.C. § 2259. The government requests that the Court impose restitution in the amount of $8,500, which is the amount of tangible loss suffered to date and requested by the child's mother. The victim's losses are likely much higher than that, as Victim 1 will require ongoing counseling, possibly for life.

**CONCLUSION**

For the reasons discussed above, the government respectfully requests the maximum sentence, as recommended in the PSR, and restitution in the amount of $8,500.

                                                  Respectfully submitted,

                                                  PATRICK A. MILES, JR.
                                                  United States Attorney

Dated: November 26, 2014               */s/ Tessa K. Hessmiller*
                                                  TESSA K. HESSMILLER
                                                  Assistant United States Attorney
                                                  P.O. Box 208
                                                  Grand Rapids, Michigan 49501-0208
                                                  (616) 456-2404